Our next case on the call of the docket is number, agenda number nine, case number 112-020, People v. Rolando Guerrero. Counsel? Good morning, Your Honors. Counsel, Erica Seaburn from the Illinois Attorney General's Office here on behalf of the People. May it please the Court. In this case, the defendant pleaded guilty in exchange for a sentencing recommendation long before this Court issued its opinion in Whitfield. Fifteen years later, he moved for leave to file a successive post-conviction petition, arguing for the first time that the lack of an MSR admonishment affected his guilty plea. The trial court gave the defendant a full opportunity to demonstrate cause and prejudice, but then rejected his testimony and denied leave to file. This Court should reverse the appellate court and uphold the trial court's finding. I'd like to begin with the prejudice prong of the cause and prejudice test. This case is controlled by this Court's 1979 decision in People v. McCoy, which is factually indistinguishable from this case. In both McCoy and in this case, the defendant pleaded guilty in exchange for a sentence recommendation. The defendant was not admonished as to MSR, but was warned that the trial court was not bound by the plea agreement for a recommendation, and his ultimate sentence, just like McCoy's, was less than the maximum sentence of which he had been admonished. And in the McCoy case, this Court concluded that McCoy's plea was knowing and voluntary. For that reason, this Court should conclude that because this case is controlled by McCoy, the defendant cannot demonstrate prejudice for the cause and prejudice test. Now, in order to evade McCoy's holding, the defendant argues here that he pled guilty in exchange for a specific sentence and not for a recommendation. In so doing, he encourages this Court to ignore the plain language of the plea agreement, which was put into the record by the parties at page 5 of the report of proceedings. He asked this Court to infer a different plea agreement from later collateral actions that took place during the plea and sentencing. The defendant has not explained why, if the parties intended that a specific sentence be agreed to and imposed, they would ever have used the word recommendation when putting the terms of the plea agreement into the record. This Court recognized in Whitefield and in previous cases that a recommendation is not the same as an agreement for the imposition of a specified sentence. This was discussed extensively in Whitefield, in which this Court specifically distinguished McCoy. Plea agreements are much like contracts, as this Court has recognized. The parties' intent for the plea agreement is clear from the record. As to the cause prong, the trial court gave the defendant full opportunity to testify and explain his knowledge of MSR and when he acquired it in order to show cause. But the trial court found his testimony unconvincing, and this can be found at page 136 of the report of proceedings. The trial court found the defendant had testified that he didn't know about MSR until a certain point, but then testified that he did. At best, the defendant's testimony was equivocal. At worst, it was misleading. The trial court correctly concluded that the defendant had not demonstrated cause. The Whitefield decision itself cannot be cause, and the defendant argues that he is not relying on the Whitefield decision. Hence, this Court should find that under either prong, the defendant has not demonstrated cause and prejudice to justify the filing of a successive post-conviction petition. Unless this Court has any questions at this time, we would... With regard to the use of the word recommendation, could that be interpreted to mean the parties were recommending to the Court that sentence, but the Court, of course, is free to accept or reject it? And I don't know if Will County uses the 402 conference as Cook County does, but many of the out-of-state counties don't. And so this is not a...may not be a fully accepted plea arrangement prior to the time that the plea is placed on the record. Is that a possible interpretation? Well, let me address the second point first. There is no evidence in the record that the parties ever sought concurrence of the trial court for the plea agreement under Rule 402 D.2. But since it was a recommendation, the Court wouldn't be able to concur anyway, because under 402 D.2, you can only seek concurrence in the expectation that a specified sentence will be imposed or that other charges will be dismissed. Now, here, the trial court did specifically warn the defendant that it was not bound by the recommendation. So the defendant was certainly on notice that the trial court might accept the 50-year recommendation or could possibly go higher, and the State ran the risk that the Court could go lower. Does that answer Your Honor's question? Yes, thank you. If the Court has no other questions, we would ask this Court to reverse the appellate court. Thank you. Thank you. Counsel for the appellate. Good morning, Your Honors. May it please the Court. Counsel, this was a negotiated plea. Excuse me. Could you please state your name for the record? Oh, I'm sorry. Carrie Bryson for Rolando Guerrero. This was a negotiated plea presented to the Court in this case. The defendant pled guilty to first-degree murder in 1991 at a time when he was 16 years old in exchange for a 50-year sentence. The State's attorney's use of the term recommend at the outset of the plea hearing is not dispositive of what sort of plea this was. The Court did not have to accept the plea, though? The Court didn't have to accept the plea, I guess, or the recommendation. If the Court had advised the defendant fully in accordance with 402D3 and made clear that the Court was not bound by the plea agreement and that any disposition could differ from what the parties were presenting. But that was – How would Whitfield apply to this case? There's no benefit of the bargain here, is there? No, there's not a benefit of the bargain. We're not making a Whitfield claim. This Court had sent the case back to the appellate court after Whitfield had been pursued because at the time this case was initially briefed in the appellate court, Whitfield was good law and was expected to have applied in collateral proceedings. Because it doesn't, we still have a claim that the plea wasn't knowing and voluntary. And that's the problem here, is that the defendant is pleading for a specific term, a 50-year sentence, and then only later finds out that he has this MSR term. He was not admonished of that at the time of the plea. That's clear from the record. It's not in the judgment order. He wasn't told about MSR. This comes later. And the failure to admonish. I thought the defendant said that he knew about MSR. Well, the testimony at the hearing on the motion for leave to file, and I think we're talking about cause here then, whether he should have presented this claim sooner, there's no testimony that he knew about anything MSR or parole at the time of the plea. There was no evidence of that in the record. He testifies as to when he specifically learned about MSR and when he learned that MSR applied to his case was in 2005 or 2006, because he happened to meet the defendant in the Whitfield case himself. He could have learned about it from anybody. In this case, he happened to learn about it from Mr. Whitfield. And it's not the Whitfield case that's the cause here. It's that Whitfield himself, in talking with Defendant Guerrero about their cases, says, hey, you know, you have to do MSR. You know, this is what's going on in my case. I mean, that's where he learns about MSR. Did the appellate court indicate that it was the Whitfield case that gave the basis for the cause? The appellate court did. The appellate court cited to both. Did the defendant argue that in the appellate court? No. The defendant did not. And a couple times tried to clarify that with the court. This case was orally argued. The State had filed, when the first decision in this case came out of the appellate court, the State had filed a petition for rehearing. It was addressed in my response to the petition for rehearing that the reliance or the cause in this case is. The State seems to argue that the defendant changed course, that he argued Whitfield was the cause, and now argues that the cause came up after the fact, after the petition was filed, based on his testimony that he didn't know about MSR. In the trial court, both things were argued. In the appellate court, in the briefs that I filed with the appellate court, we argued that it's the late gained knowledge of MSR itself. It's not the Whitfield decision. But it's this defendant did not know that MSR was going to apply to his particular case until he learned about it from Whitfield. He could have learned about it from Joe Smith, and maybe it would be more clear then that the problem is when he learned about MSR. The problem is not the issuance of this court's decision in Whitfield. That's not the cause.  And in talking about their situations, learn about MSR. Well, the appellate court, I think, went out of its way to state, though, that in light of Morris, it must decide the case based on the law that existed prior to Whitfield. Right. That's what they said. So on one hand, you're saying, well, they made their decision based on Whitfield, but their decision says they made it on the law that existed prior to Whitfield. And if that's the case, certainly Whitfield can't be the cause here. Not Whitfield the case, but Whitfield the person is the cause. Whitfield the person telling my client about. I understand your argument, but I'm not so sure the appellate court is as confused as indicated, because they said they're deciding the case based on the law prior to Whitfield. Right. And then we have, I think, what Justice Carmer was talking about, that there's point-counterpoint as to whether or not this defendant, who talked at length about parole and understanding of parole, really didn't know at any time. So what about that? Okay. What about the appellate court's decision that they said they applied the law prior to the Whitfield case? Right. I think in terms of the substantive law, I mean in terms of the basis of this challenge, that it's not a benefit of the bargain claim. It's still a claim that the plea was not knowing involuntary, and that was around prior to Whitfield. That's the basis for the prejudice. But isn't that an argument that could have been made long before a successive post-conviction petition? Only if the defendant had known that he was going to have to serve MSR. And the record is, I would submit, not as clear as the trial court thought and not as clear as the state seems to think about when this defendant knew that he specifically was going to have to serve a term of MSR. There was questioning about parole. Did you know about parole? Well, I heard of parole. I heard of people going to the parole board, but I didn't know that it would apply to me. Probably because it doesn't. Parole does not apply in this case, and although they're similar, they are not the same thing. At the time this defendant was initially incarcerated, in 1991, there were probably a lot more people still going to the parole board and seeking release, discretionary, with the parole board. MSR applies to this case, but at that time, and there are still people who go before the parole board. What was the age of the defendant at that time? He was 16 when he pled, and initially was sent to the juvenile division and then ultimately transferred to the adult division of the Department of Corrections. Is the defendant's alleged subjective lack of knowledge an objective factor in the cause and prejudice test? He has to know that MSR applies to him. Whether it's subjective, I mean, I think it's an objective factor in this case because he's not told. I mean, that's clear. Well, what about, you know, you cite an 85 case, Lauterback, where the appellate court, from the appellate court where the trial court failed to admonish the defendant at the time he'd have to serve a term of MSR, and the appellate court said an accused cannot be said to have intelligently and voluntarily entered his plea of guilty or no mention was made at the time he entered his plea that he would be subject to a term of mandatory supervised release. Obviously, that case was out long before this ever occurred. So why wouldn't the defendant have been on, shouldn't he have been on notice that if he wanted to file this claim, he should have been at the first go around? Except he wasn't, he didn't know MSR applied to him. So for us to assume that a pro se defendant in initially the juvenile division of the Department of Corrections and then in the adult division is searching the case law for a requirement that he's never told applies to him, MSR, I think assumes too much. You know, at this point, what we're looking for is did he state the gist of a claim of cause and prejudice? And the cause is he didn't know. If he didn't know MSR applied to him, he could not be expected to have brought a claim based on the failure to admonish him about MSR because he didn't know. And the record is clear, he wasn't told about MSR at the plea. He wasn't told about MSR in the judgment order that was issued by the court at the time he pled guilty and was sentenced. And as to the testimony. What was the date? Did he know it before his direct appeal? No. There's nothing in the record to indicate that he knew it before the direct appeal. There's nothing in the record to indicate that he knew about MSR before the first post-conviction petition. I mean, it's, there's some talk about, well, you certainly knew about parole. Yeah, I heard about parole. Well, did you know you were going to have to do parole? Well, I knew the DOC was going to implicate something on my sentence. He says, he doesn't say when. He's not pushed to say when that was. When he is pushed to answer the question of when did you learn MSR specifically applied to your case, he is entirely consistent that it is in 2005 or 2006 when I talked to Ronald Whitfield. What type of standard of review? The trial court, as I understand it, you know, heard testimony as to whether he knew or didn't know, right? Right. And that seems to be the only issue left here. If we're not left with a Whitfield situation, Whitfield the case, we're left with a Whitfield person, whether that's when he first learned. I suspect that at the hearing on the successive post-conviction petition, there was, as I said before, point-counterpoint as to whether he knew or didn't know. The trial judge, hearing the evidence on that, decided that he knew earlier, presumably, right, and denied relief on the successive post-conviction petition. Well, he denied relief to file the petition. Okay. That's it. All right. Okay. So, yeah, denied relief to file the petition. So now the appellate court, is that a, if that's the real issue here, is it a manifest way to the, do we defer to the trial judge who heard the testimony? Sure. If we're looking at the court's ruling on the motion for relief to file where he heard testimony, made factual findings, there is some deference to the trial court. That doesn't mean blind adherence to what the trial court said, and I would submit on this record the court was simply wrong. The court said, I have heard the testimony, he said he knew about parole. Well, again, first of all, this is not parole that we're talking about. It's MSR. And the court was simply wrong on this record. There was no testimony at that hearing that would show that this defendant knew prior to the time of his first post-conviction petition, which was in 1994, that MSR applied to his specific sentence, his specific situation. Does, I'm not sure how this works exactly, but after the sentence, I presume the defendant would get a copy of the sentencing order or the minimus. Does it refer to the MSR? And does that, if it does not, then my next question doesn't mean anything. Does that factor into our analysis? I think it could factor in. If it were in the written judgment order, it's not in the judgment order that's on file in this case. So it isn't in the minimus that goes to the department? It's not in anything that was filed, filed stamp that's in the common law record back at the time of the plea, and the time he would have been transferred to the custody of the Department of Corrections. Let's talk about the prejudice prong for a minute, because you made the distinction between probation and MSR. Here's one of the quotes from the defendant, that he knew DOC was going to implement something on his sentence, and that he would have to serve a term of what he considered to be parole. So what is the prejudice to the defendant in not knowing that it's MSR, but knowing he's going to have to serve a subsequent term? But it doesn't say when he knew. It doesn't say he knew at the time of the plea. It doesn't say he knew at the time of the first post-conviction petition or at the time of the direct appeal, times when this claim could have been expected to have been brought prior. In terms of when he specifically knew it applied to him, 2005, 2006, and that's consistent. What he knew prior would be dependent on how long prior. Did he know prior to 1994, really? Because that's the time of the initial post-conviction petition. There was nothing filed in the interim. There was this delay. And back to the trial court, the trial court made a finding based on this testimony, that and other testimonies, what I read in other testimony, the trial court specifically stated that it did not believe defendant's claim that he first learned of MSR in 2006 from Whitefield. So now we have a trial court determination as to the credibility. What do we do with that? Well, again, it's a deference, but it's not a blind adherence to that. And I think if this court looks at what the actual testimony was at that hearing, there's nothing that says it was before the time of the first post-conviction petition, which for cause, that's what we're looking at. What was the timing with regard to could you have brought this in the original post-conviction proceedings? Nothing establishes that he could have. The testimony establishes that when he's pinned down on a date, 2005, 2006, when he's asked about did you know prior, well, yeah, I knew some things prior. And again, it's parole, MSR, they talk about both. How long prior? No, it's not shown. What is shown is 2005, 2006. That's certainly well after the time of the initial post-conviction proceedings in this case. So I would submit has clearly established cause for not bringing this in those proceedings. You said at the outset of your argument this is not a benefit of the bargain Whitfield case, but you are claiming that the plea is not going involuntary. Why does McCoy not take care of, as the State argues? Because this is a fully negotiated plea. I mean, in McCoy we're talking. So we would have to find that this is a fully negotiated plea. It does need to be a negotiated plea. And I think the record clearly establishes that it was. If you look at the plea proceedings, what we have is the State saying this is what we're recommending. That's the parties coming to the court where there hasn't been a 402 conference, and when we get a fair number of Will County cases in our office, they don't seem to do 402 and they seem to present pleas this way. I can't speak to whether that's a firm practice, but that seems to be the way these pleas are presented in Will County. I mean, the State's attorney couldn't bind the trial court. They have to present this as this is what we're recommending. But it was what they had agreed to. But if it isn't a fully negotiated plea, then it's McCoy. It is McCoy if it's not fully negotiated. Unless the court has other questions, I'd ask that you affirm the decision of the appellate court. Thank you. Thank you. Ms. Seaborn? I'd like to begin by addressing the court's more recent questions about the prejudice prong. Our position is that McCoy does apply. The word recommendation means something. It's not the same as a closed plea, nor does the word negotiated really answer the question for us. There were negotiations between the parties. They clearly had a conversation. They came to an agreement. The agreement was for a recommendation. McCoy recognizes the distinction between a recommendation and a closed plea. So does the Whitfield decision. In this court's case of People v. Linder, the special concurrence lays out many different categories of plea agreements, including the distinctions between a recommendation and a closed plea for a specific sentence. Again, if this was a specific sentence, there's no reason that they would use the word recommendation. The two things are simply not the same. And there's really nothing else in the record to indicate that this was a plea for an imposition of a specified sentence. In order to find prejudice here, the court would have to completely overrule People v. McCoy and every other case that has relied on it since, and the Whitfield decision also relies on McCoy. In terms of McCoy, McCoy itself was certainly available when defendant filed his first postconviction petition in 1994. McCoy came out in 1979. So certainly if we're looking at the case law that was available to the defendant pre-Whitfield, McCoy was out there. And as previously stated, McCoy is factually indistinguishable. Now in terms of the cause prong, the question is not whether or not the defendant knew about MSR at the time that he pleaded guilty. It's not disputed that the trial court failed to admonish defendant. The trial court should have done so. It did not. That's not disputed. What matters is when the defendant found out about cause and whether or not he could have raised this in his first PC. That's what the cause and prejudice test is concerned with. Now there's been a lot of discussion about what the testimony shows or doesn't show, but Section F is very clear. It's defendant's burden to demonstrate cause and prejudice. It's not the state's problem to prove conclusively when it is the defendant learned about MSR. It was defendant's burden to convince the trial court through his testimony that he did not learn about MSR until it was too late for him to raise it in his first PC. Now when defendant first raised his first, his successive post-conviction petition, he was pro se. By the time they had this hearing, he had counsel. He got up there. He testified. He cross-examined. He testified again. He was cross-examined again. It was extensive testimony on this point. Defendant had a full opportunity to demonstrate cause, and he couldn't do it because he kept changing his story as to when he knew about this information. On pages 104 and 05 of the report of proceedings, he says he first learned about MSR from Whitfield, and that didn't happen until 2005 or 2006. A few pages later, he admits that prior to 2005, he knew that he would have to serve parole. And a couple pages after that, he says that he first learned what parole was in 1995 or 96, maybe. But he also says he just wasn't thinking about what he would have to serve after his sentence because he had a long prison term still ahead of him. He can't testify with any certainty as to when it is that he learned about MSR, and because it's his burden to demonstrate cause, any gaps in the record about his knowledge lay on defendant in this case. One final point is that although defendant says that he's not relying on Whitfield, it should be noted that he still desires a Whitfield remedy, and that is what he received from the appellate court. And as we argued in our brief, the type of Whitfield remedy is not appropriate for a knowing and voluntary claim. Whitfield remedies are for benefit of the bargain claims. Here, he received the benefit of his bargain. He bargained with the state for a recommendation of 50 years, and that is precisely what he received. Prejudice prong is controlled by McCoy, and defendant did not demonstrate cause. If the court has no other questions, we'd ask this court to reverse the decision of the appellate court. Thank you, Your Honors. Thank you, Ms. Seaborn, and thank you, Ms. Bryson, for your arguments today. Case number 112-020, People v. Guerrero, is taken under advisement as agenda number 9.